IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:
ALEXIS JONES-MCDANIEL, as
Personal Representative for the :
Estate of Jailyn Lawrence Jones,
et al.                          :

    v.                          :    Civil Action No. DKC 24-3075

                                :

BOARD OF EDUCATION OF MONTGOMERY
COUNTY, et al.                  :

**MEMORANDUM OPINION**

Plaintiff Alexis Jones-McDaniel ("Plaintiff Jones-McDaniel"), is the mother and personal representative of the Estate of Jailyn Lawrence Jones ("Jailyn" or "Decedent"). She brought this action on behalf of the Estate and in her individual capacity against Defendants Board of Education for Montgomery County, Maryland ("Board"), Montgomery County Public Schools ("MCPS"), Montgomery County, Maryland ("County"), and Jane/John Does ("Doe Defendants"), alleging violations of 42 U.S.C. § 1983 (Counts I-III), and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* (Count IV), as well as asserting claims for negligence (Count V), wrongful death (Count VI), a survival action (Count VII), violations of the U.S. Constitution and Maryland Declaration of Rights (Count VIII), and *respondeat superior* (Count IX). (ECF No. 1). Currently pending are (1) the motion to dismiss filed by the Board and MCPS (ECF No. 24) and (2)

the motion to dismiss filed by the County (ECF Nos. 25, 33).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, both motions to dismiss will be granted.

I.   **Background**

A.   **Factual Background[1]**

Plaintiff Jones-McDaniel is the mother of Decedent, who died tragically on or about January 21, 2022.  She brings the present action, somewhat confusingly, both as the personal representative of Decedent's estate for the actions that took place prior to his death, and in her individual capacity for the actions that resulted in her son's death and those that took place after and were directed at her personally.  Plaintiff alleges that MCPS, the Board, and the County (collectively, "Defendants") knew or should have known that Decedent's well-being and life were at risk and that Defendants' failure to protect Decedent ultimately resulted in his death.

1.   **Facts Relevant to Decedent**

Jailyn was a high school student enrolled in school in the MCPS system.  Jailyn "suffered from an emotional disability,

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiff.  A significant number of allegations are made "on information and belief," a problematic practice that ultimately dooms this complaint.

attention deficit hyperactivity disorder, post-traumatic stress disorder, and mood disorder, which resulted in behavioral difficulties including self-management and task management and affected his social, emotional, and behavioral skills." (ECF No. 1 ¶ 31). He also suffered from Blount's disease, "which affected his growth plates and caused several surgeries during his academic career." (*Id.*). Since enrolling in MCPS in 2008, Jailyn had Behavioral Improvement Plans ("BIPs") and/or Individualized Education Programs ("IEPs"). (*Id.* ¶ 32).

In 2019, Jailyn was a student at Clarksburg High School. Jailyn participated in "self-contained classroom instruction for math, English, social studies, and human behavior; for other classes he participated in general education classes with an instructional assistant." (*Id.* ¶ 33). Jailyn also received a one-hour, monthly counseling session. (*Id.*).

Jailyn's 2019 BIP from Clarksburg High School stated that he:

> had difficulties with social interactions (paranoid that peers are talking about him, misinterprets peer discussion as being negative towards him) . . . instigates gossip and then negatively reacts when he is called names. His behavior towards these issues is by being physically aggressive or targeting other students to repeat the same behavior.

(*Id.* ¶ 34). "A May 19, 2019 review of the BIP indicated that Jailyn had been suspended twice for fighting and peer conflicts in hallways." (*Id.* ¶ 35). While attending Clarksburg High School,

3

Jailyn was assaulted by two students and ultimately suffered a torn retina. (*Id.* ¶ 36).

On February 10, 2020, Jailyn took a handgun and a loaded magazine to school. (*Id.* ¶ 37). As a result, he was suspended and recommended for expulsion. (*Id.*). Plaintiff alleges, upon information and belief, that Jailyn was also referred to the police for investigation. (*Id.* ¶ 38). The expulsion hearing report explained that "Jailyn had taken the gun to school because students in the Social Emotional Special Educational Services program made disparaging comments about Jailyn's recently deceased grandmother and threatened to shoot up his home. The students attacked Jailyn in the restroom and robbed him of his wallet . . . and the gun." (*Id.* ¶ 39). "Upon information and belief, Jailyn was not with his instructional escort during the incident." (*Id.* ¶ 40). "Upon information and belief, school video showed Jailyn was not the aggressor during the February 10, 2020 incident and no juvenile justice action was taken against Jailyn." (*Id.* ¶ 41).

After the incident, Jailyn was transported to the hospital for a psychiatric evaluation and diagnosed with anxiety and dysfunctional mood disorder. "Upon information and belief," J.F., an 18-year-old student, "was criminally charged, along with other juveniles, in relation to the February 10th incident." (*Id.* ¶ 43).

"Upon information and belief, MCPS was aware that [J.F.] had a violent background and criminal history." (*Id.* ¶ 44).

"On March 12, 2020, Jailyn was expelled from Clarksburg High School but continued to receive education services through an alternative education program at the Blair G. Ewing Center." (*Id.* ¶ 45). "Jailyn continued to be affected by his emotional disability and mental health diagnoses and needed a structured setting to learn." (*Id.* ¶ 46).

Jailyn's 2021 IEP stated that Jailyn was "having problems with harassment from another student." (*Id.* ¶ 47). Jailyn's IEP also "indicated Jailyn's academic transition activity was to 'continue to participate in distance learning earning his credits to graduate.'" (*Id.* ¶ 48). Jailyn received special education classroom instruction in a self-contained resource setting and received counseling to discuss ways to improve peer relationships and self-management.

"Over the objections of his mother" and under threat of "truancy charges" by MCPS Pupil Personnel Worker Ellen O'Connell, Jailyn was enrolled in Northwest High School for the 2021-2022 school year. (*Id.* ¶¶ 49-50). "[U]pon information and belief" Jailyn "was placed in classes with the same students by whom he had been bullied and had conflict [with] at Clarksburg High School." (*Id.* ¶ 51).

On December 15, 2021, Jailyn received a one-day suspension for "using threatening, offensive, abusive, and disrespectful language towards staff members." (*Id.* ¶ 52).

"On January 18, 2022, upon information and belief, Jailyn attempted to retrieve his personal electronic device from student [T.H.], whom Jailyn believed had stolen it from him, and was involved in an altercation." (*Id.* ¶ 53). "Upon information and belief, [T.H.] was Jailyn's classmate and had taken a ghost gun to Northwest High School two weeks prior." (*Id.* ¶ 54). On January 20, 2022, Jailyn received a two-day suspension from Northwest High School. (*Id.* ¶ 55).

"Upon information or belief, on or about January 21, 2022, [T.H.] lured Jailyn from his home via a text message." (*Id.* ¶ 56). On or about January 21, 2022, Plaintiff Jones-McDaniel contacted the Montgomery County Police Department to file a missing person's report, but her request was denied because there was an open missing person's report from January 7, 2022.

On or about January 24, 2022, Jailyn's remains were found near 18900 Grotto Lane, Germantown, Maryland. "Upon information and belief, MCPS officials were planning to transfer Jailyn to a virtual school setting the week of January 25, 2022[,] for his safety." (*Id.* ¶ 59).

Plaintiff alleges upon information and belief that "[T.H.], Northwest High School student [X.T.], and former MCPS student [Q.B.] murdered Jailyn." (*Id.* ¶ 66). On or about May 14, 2022, [T.H.] was arrested and charged with Jailyn's death. In November of 2023, [T.H.] was acquitted of the criminal charges. In June of 2022, Pupil Personnel Worker Ellen O'Connell delivered Jailyn's education records to Plaintiff Jones-McDaniel. Pupil Personnel Worker O'Connell "apologized and admitted Jailyn could have remained in a virtual learning environment instead of attending Northwest High School." (*Id.* ¶ 65).

Plaintiff contends that Defendants are responsible for her son's death because, had he not been suspended from school, he would not have been vulnerable to being lured to his death by his assailants.

### 2.  Facts Relevant to Plaintiff Jones-McDaniel

Plaintiff alleges, on information and belief, that a Montgomery County Commissioner issued an interim extreme risk order[2] against her in the early morning hours of February 22, 2022, and that on February 23, 2022, at 10:30 a.m., deputies from the Montgomery County Sheriff's Department went to her home to "serve

_____

[2] An "extreme risk protective order" (ERPO) is issued pursuant to Md. Code Ann., Pub. Safety §§ 5-601 *et seq*, to prohibit a person from possessing a firearm when there is a showing that reasonable grounds exist to conclude that a respondent poses a danger to herself or others.

the interim order, search[] her home, and seize[] guns stored
inside the residence." (*Id.* ¶ 62). She further alleges upon
information and belief that "on or about February 23, 2022,
Montgomery County Crisis Center Licensed Clinical Professional
Counselor Manuel Calero filed a petition for emergency evaluation
against [her]." (*Id.* ¶ 61).

"Police Officer B. Then petitioned, and Judge Zuberi B.
Williams issued a temporary extreme risk protective order against
Plaintiff Jones-McDaniel." (*Id.* ¶ 63). On or about February 23,
2022, Shady Grove Medical Center determined Plaintiff Jones-
McDaniel did not meet the criteria for acute psychiatric care.

**B.   Procedural Background**

On October 23, 2024, Plaintiff filed the complaint (ECF
No. 1). On December 17, 2024, the Board and MCPS filed a motion
to dismiss (ECF No. 24). The County filed a motion to dismiss
under seal (ECF No. 25), and a consent motion to seal its motion
to dismiss (ECF No. 26) on December 18, 2024. On December 30,
2024, Plaintiff filed an opposition to the Board and MCPS's motion
(ECF No. 27). On December 31, 2024, Plaintiff filed an opposition,
under seal, to the County's motion to dismiss (ECF No. 28). On
January 13, 2025, the Board and MCPS replied to Plaintiff's
opposition (ECF No. 29), and the County replied to Plaintiff's
opposition on January 14, 2025 (ECF No. 30). On August 8, 2025,

the court granted the County's motion to seal in part, and unsealed Plaintiff's improperly sealed opposition (ECF Nos. 31, 32).  The County subsequently filed redacted versions as directed. (ECF Nos. 33, 34).

## II.  Motion to Dismiss

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A plaintiff's complaint need satisfy only the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that defendant is liable for the misconduct alleged."
*Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

### B.   Analysis

Plaintiff brings the following counts in the complaint: violations of 42 U.S.C. § 1983 (Counts I-III), violations of Title IX (Count IV), negligence (Count V), wrongful death (Count VI), survival action (Count VII), violations of the U.S. Constitution and Maryland Declaration of Rights (Count VIII), and *respondeat superior* (Count IX).  (ECF No. 1).  Plaintiff does not specify in which capacity she brings each claim or to which Defendant each count applies; thus, the court will assume that she intends to allege each count against all Defendants.

### 1.   Information and Belief Pleading

Many of Plaintiff's allegations are made "upon information and belief."  As has been stated before: "Under the pleading standard the Supreme Court of the United States articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'"  *Van Buren v. Walmart, Inc.*, 611 F.Supp.3d 30, 36 (D.Md. 2020), *aff'd*, 855 F.App'x 156 (4th Cir. 2021) (quoting *Harman v. Unisys Corp.*, 356 F.App'x 638, 640-41 (4th Cir. 2009)). Further,

> As Judge Grimm has noted, it is important to differentiate "between a case in which

> pleading 'upon information and belief' is used
> as an inadequate substitute for providing
> detail as to why the element is present in an
> action . . . [and the] proper use of 'upon
> information and belief,' where a plaintiff
> does not have personal knowledge of the facts
> being asserted." *Malibu Media* [*, LLC v. Doe*,
> No. 13-365-PWG], 2014 WL 7188822, at *4
> [(D.Md. Dec. 16, 2014)] (citations and
> internal quotation marks omitted).
> "'[P]leading on the basis of information and
> belief is generally appropriate' where
> information is 'particularly within
> defendants' knowledge and control.'" *Kajoshaj
> v. N.Y.C. Dept. of Educ.*, 543 F.App'x 11, 16
> (2<sup>d</sup> Cir. 2013) (quoting *Boykin v. KeyCorp*, 521
> F.3d 202, 215 (2<sup>d</sup> Cir. 2008)).

*Id.* at 37.

Even if information is "particularly within defendants' knowledge and control," conclusory pleading is not permitted: "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." 5 Wright & Miller's Federal Practice and Procedure § 1224 (4th ed., May 2025 update). A plaintiff relying on "information and belief" pleading must include substantive facts in support of that belief. As discussed below, the complaint relies far too heavily on "information and belief" pleading without including substantive facts in support.

11

### 2.   Montgomery County Public Schools

As an initial matter, the Board and MCPS move to dismiss MCPS as a defendant because "MCPS is not a distinct legal entity empowered to sue or be sued." (ECF No. 24-1, at 8).  Plaintiff responds that MCPS is "a 'local educational agency' . . . and receives federal funding and is therefore subject to [IDEA] . . . and its implementing regulations in 34 C.F.R. Part 300." (ECF No. 28, at 5).

The Board and MCPS are correct.  "MCPS is not a distinct legal entity empowered to sue or be sued.  Under Maryland law, the board of education for each county school system . . . is the entity which is empowered to sue and be sued." *Miller v. Montgomery Cnty. Pub. Schs.*, No. 19-cv-3067-TJS, 2020 WL 2097686, at *1 (D.Md. May 1, 2020) (citing Md. Code, Educ., §§ 3-104(a) and (b)(2)). Accordingly, all of Plaintiff's claims against MCPS will be dismissed.

### 3.   Counts I-III: 42 U.S.C. § 1983 Claims

Counts I-III purport to allege claims against all Defendants, although the factual bases of Plaintiff's claims do not implicate all Defendants.

### a.   The Board

The Board argues that Plaintiff's § 1983 claims (Counts I-III) should be dismissed because "the [Board] does not meet the

12

definition of a 'person' under § 1983" and therefore Plaintiff's claims "fail as a matter of law . . . ." (ECF No. 24-1, at 9-10). The Board further contends that, to the extent Plaintiff "attempts to bring a claim via § 1983 for an alleged IDEA violation, such a claim" is not permitted. (*Id.* at 10) (citing *Sellers by Sellers v. Sch. Bd. of the City of Manassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998)).

Section 1983 provides a cause of action against any "person" who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

"It is well established, however, that county school boards in Maryland are considered state agencies and that, as state agencies, school boards are not considered 'persons' under § 1983." *J.G. v. Prince George's Cnty. Bd. of Educ.*, No. 16-cv-1008-PWG, 2017 WL 930130, at *4 (D.Md. Mar. 8, 2017) (quoting *Schiffbauer v. Schmidt*, 95 F.Supp.3d 846, 852 (D.Md. 2015)) (citation modified). Because the Board is a school board, and

13

thus a state agency, it is not a "person" under § 1983, and thus not amenable to suit pursuant to § 1983.

In the opposition, Plaintiff argues that she has alleged sufficient facts to support the § 1983 claims against the Board. Specifically, she explains that her § 1983 claims are premised on the Board "suspend[ing] Decedent [] in violation of the IDEA, fail[ing] to protect him despite the actual notice of the dangers of bullying and harassment based on his disability, and [creating] a danger to him that was the proximate cause of his death." (ECF No. 27, at 5).

Plaintiff's contention that *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), authorizes school boards to be sued as "persons" pursuant to § 1983 is incorrect as applied to this case. "Maryland's county school boards are not local government units, rather they are instrumentalities of the State." *J.G.*, 2017 WL 930130, at *4 (citing *Zimmer-Rubert v. Bd. of Educ. of Balt. City*, 179 Md.App. 589, 599 (2008) ("The [Supreme Court of Maryland] undoubtedly considers county school boards instrumentalities of the State rather than independent, local bodies.")). As the Supreme Court of the United States has explained, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

14

Further, even if the Board was subject to *Monell* liability Plaintiff still fails to state a claim under § 1983. The United States Court of Appeals for the Fourth Circuit has explained that "[b]ecause IDEA provides a comprehensive remedial scheme for violations of its own requirements . . . parties may not sue under section 1983 for an IDEA violation." *Sellers*, 141 F.3d at 529. Thus, Plaintiff is unable to use § 1983 as a vehicle for the Board's alleged IDEA violations.

Counts I-III against the Board will be dismissed.

**b.    The County**

The County contends that Plaintiff's § 1983 claims must be dismissed because "Plaintiff fails to state a *Monell* claim against the County." (ECF No. 33-1, at 13) (citing *Monell*, 436 U.S. 658).

As this court has previously explained:

> Under *Monell*, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). Policy or custom may be found in a number of ways, such as "in . . . 'persistent . . . practices of [municipal] officials having the de facto force of law.'" *Milligan*, 743 F.2d at 229. "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91. Policy or custom may also "be inferred from continued inaction in the face of a known

15

> history of widespread constitutional
> deprivations on the part of city employees."
> *Milligan*, 743 F.2d at 229–30.  Under narrow
> circumstances, policy may also be inferred
> "from the manifest propensity of a general,
> known course of employee conduct to cause
> constitutional deprivations to an
> identifiable group of persons having a special
> relationship to the state."  *Id.* at 230.
> However, "a municipal policy or custom giving
> rise to § 1983 liability will not be inferred
> merely from municipal inaction in the face of
> isolated constitutional deprivations by
> municipal employees."  *Id.*

*Lanford v. Prince George's County*, 199 F.Supp.2d 297, 304–05 (D.Md.

2002) (citations omitted).

Plaintiff fails to allege a municipal policy or custom of the

County that proximately caused the alleged constitutional

violations.  In fact, the complaint's § 1983 allegations focus

solely on the actions or inactions of employees of the Board.

Specifically, each of the § 1983 counts alleges that actions or

inactions of school employees ultimately resulted in the violation

of Decedent's rights under the Fourth and Fourteenth Amendments.

(ECF No. 1 ¶¶ 89, 98, 112).  Because Plaintiff has not alleged a

policy or custom attributable to the County, the § 1983 claims

against the County cannot stand.

In opposition, Plaintiff argues that she has stated a viable

*Monell* claim against the County by alleging that "the execution of

the State policy regarding extreme risks and emergency evaluations

resulted in the violation of Plaintiff Jones-McDaniel's" rights

16

under the "Second, Fourth, Fifth, and Fourteenth Amendments [to] the U.S. Constitution and Maryland Declaration of Rights Articles 24 and 26." (ECF No. 28, at 8). Counts I-III of the complaint, however, are entirely devoid of any allegations concerning a violation of Plaintiff Jones-McDaniel's own constitutional rights. Instead, Counts I-III are pleaded as survival claims, alleging only violations of Decedent's constitutional rights. (ECF No. 1 ¶¶ 69-142).

Accordingly, Counts I-III against the County will be dismissed.

### 4.  Count IV: Title IX

In Count IV, Plaintiff alleges that all Defendants were deliberately indifferent to or had actual knowledge of the fact that "students were bullying, harassing, abusing, intimidating, and otherwise harming and threatening [Decedent] on the basis of his disability" in violation of Title IX (ECF No. 1 ¶ 146).[3]

---

[3] Plaintiff, in one of her oppositions, attempts to amend her complaint. (*See* ECF No. 27-1). Specifically, she attempts to change Count IV to a claim for violations of "Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the Americans with Disabilities Act of 1990 (Title II)." (*Id.* at 24). A complaint, however, "may not be amended by the briefs in opposition to a motion to dismiss." *Menk v. MITRE Corp.*, 713 F.Supp.3d 113, 166 n.19 (D.Md. 2024) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D.Md. 1991)). Further, Plaintiff failed to provide the court with a clean copy of the amended complaint as required by Local Rule 103(6)(c). Accordingly, the court will not consider any proposed amendments in deciding the motions to dismiss. In any event, Plaintiff fails

17

Defendants argue that Plaintiff fails to state a Title IX claim because there are no allegations of sex-based discrimination. (ECF Nos. 24-1, at 10-13; 33-1, at 14).[4]

Title IX prohibits discrimination "on the basis of sex" in "any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). An institution subject to Title IX can be liable for "'deliberate indifference to known acts of [student-on-student sexual] harassment in its programs or activities,' if that harassment 'is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) (quoting *Davis*

---

to state a claim under either Title II of the ADA or Section 504 of the Rehabilitation Act. To state a claim under either Title II or Section 504, a plaintiff must allege that: "(1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability." *Innes v. Bd. of Regents of the Univ. Sys. of Md.*, No. 13-cv-2800-DKC, 2015 WL 1210484, at *4 (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). Plaintiff has not alleged that Defendants discriminated against Decedent at all, let alone on the basis of his disability. Thus, the proposed amendment would be futile.

[4] The County also moves to dismiss Count IV as to itself because "the County is not an educational agency that receives federal funding." (ECF No. 25-1, at 14) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 700 (4th Cir. 2018)).

*v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)); *see also
Roe v. Marshall Univ. Bd. Of Governors*, 145 F.4th 561, 567 (4th
Cir. 2025).  Thus, to state a claim, Plaintiff must allege:

> (1) that the educational institution receives
> federal funds; (2) that the plaintiff "was
> subjected to harassment based on [his] sex";
> (3) that "the harassment was sufficiently
> severe or pervasive to create a hostile (or
> abusive) environment in an educational program
> or activity"; and (4) that "there is a basis
> for imputing liability to the institution."

*Feminist Majority Found.*, 911 F.3d at 686 (quoting *Jennings v.
Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007)).  Plaintiff has
not done so here.

As an initial matter, the Board and MCPS argue that Plaintiff
Jones-McDaniel does not have standing to bring a Title IX claim in
her individual capacity because she was not "a student at an
educational institution receiving federal funds."  (ECF No. 24-1,
at 10-11).  A "Title IX claim can be asserted only by the Estate."
*Willey v. Bd. of Educ. of Saint Mary's Cnty.*, 557 F.Supp.3d 645,
659 n.7 (D.Md. 2021).  Thus, Count IV as it relates to Plaintiff
Jones-McDaniel is dismissed.

The claim brought by the Estate will also be dismissed.  The
complaint is entirely devoid of any allegation of sex-based
discrimination and instead alleges disability-based
discrimination.  (ECF No. 1 ¶ 146).  Because Plaintiff has not
alleged sex-based discrimination, Count IV will be dismissed.

5.    **Count V: Negligence**

In Count V, Plaintiff purports to allege a negligence claim against all Defendants, although the factual bases of Plaintiff's claims do not implicate all Defendants.

Plaintiff alleges that "Defendants are responsible for the operation, security, management, budgeting, and all other aspects of the Montgomery County school system." (ECF No. 1 ¶ 161). The complaint further alleges that "Defendants had a special relationship with students which gives rise to a duty of care" and "[a]t all relevant and material times, Defendants had a duty to act reasonably to protect students who are in their care, custody, and control by supervising and exercising control over its pupils with reasonable care as to prevent harm to others[.]" (ECF No. 1 ¶¶ 162, 164). Plaintiff alleges that:

> Around January 20, 202[2], at Northwest High School, Defendants, by and through their agents, servants, and/or employees, breached their duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:
>
> a. Failing to provide adequate security for their students, employees, licensees, and invitees, including Decedent;
> b. Failing to warn their students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat posed by [T.H.] or other students, when they knew or in the exercise of reasonable care should have known that [T.H.] had a significant history of

20

violence, making threats of violence including at school;

c. Failing to warn their students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat of danger, when they knew or in the exercise of reasonable care should have known that there were recent school altercation and/or threats made;

d. Failing to adequately police, patrol, guard, deter, and otherwise provide reasonable protection for their students, employees, licensees, and invitees, when Defendants knew or should have known of foreseeable criminal acts;

e. Failing to reasonably hire and/or retain and/or supervise adequate security personnel to patrol and/or monitor the premises of Northwest High School, thereby protecting their students, employees, licensees, and invitees, including Decedent;

f. Failing to have proper procedures in place for hiring, training, and/or supervising school resource officers, monitors, police officers, or other staff responsible for school security;

g. Failing to install and use security measures, protocols, and features;

h. Failing to have a sufficient number of security guards in visible areas to deter crime, thereby protecting their students, employees, licensees, and invitees, including Decedent;

i. Failing to have adequate mechanisms for security personnel, staff, employees, students, and others within the school community to report real threats or other security concerns against themselves or others;

j. Failing to properly train employees, administrators, guards, and/or other employees to adequately supervise the campus in such a way that would prevent acts of violence;

k. Failing to implement or follow adequate security policies, security measures, and

> security procedures necessary to protect
> Decedent and other students, employees,
> licensees, and invitees;
> l. Failing to take additional security
> measures after being put on notice that the
> security measures in force were inadequate;
> m. Failing to adequately provide an overall
> security plan that would meet the known
> industry standards and customs for safety in
> schools;
> n. Failing to adequately screen or monitor
> those entering the premises for the possession
> of weapons;
> o. Acting or failing to act consistently with
> the relevant policies, procedures,
> guidelines, and training relating to the
> protection of human life.

(*Id.* ¶ 180).

Plaintiff seems to proceed on two separate theories of negligence: (1) that Defendants were negligent in failing to protect Decedent from the January 2022 assault and battery at school, and (2) that Defendants were negligent in suspending Decedent when they knew "upon information and belief," that "[T.H.] posed a serious threat to Decedent's safety." (ECF No. 1 ¶¶ 182-83). Plaintiff further alleges that the actions or inactions of Defendants were the proximate cause of Jailyn's death. Both the County and Board have moved to dismiss Plaintiff's Count V on separate grounds.

### a. The County

The County argues that Plaintiff's negligence claim against it should be dismissed because Plaintiff "fails to set forth any

22

factual allegations at all directly pertaining to the County."
(ECF No. 33-1, at 14).   Further the County argues that "to the
extent Plaintiff intends any claims relating to the County's
exercise of its governmental functions, such as operation of its
police force and/or Crisis Center, [the County] is entitled to
governmental immunity."  (ECF No. 33-1, at 14) (citing *DiPino v.*
*Davis*, 354 Md. 18, 47 (1999)).

Plaintiff does not allege any negligent action or inaction
attributable to the County.  In fact, the entirety of Count V is
premised on an alleged breach of a duty owed by the Board to
students by way of a "special relationship."  Plaintiff fails to
state a claim for negligence against the County and Count V, as to
the County, will be dismissed.

     **b.   The Board**

The Board contends that Plaintiff's claim must be dismissed
because the Board "did not breach any duty owed to Plaintiffs and
did not proximately cause Jailyn's injuries or death."   (ECF
No. 24-1, at 13).   To state a claim for negligence, a plaintiff
must allege that: "(1) the defendant was under a duty to protect
the plaintiff from injury; (2) the defendant breached that duty;
(3) the plaintiff suffered actual injury or loss; and (4) the loss
or injury proximately resulted from the defendant's breach of the
duty."  *Quigley v. United States*, 865 F.Supp.2d 685, 696 (D.Md.

2012); *see Rhaney v. Univ. of Md. E. Shore*, 388 Md. 585, 597-98 (2005).

As to Plaintiff's first theory of negligence, the Board argues that Plaintiff's allegations are conclusory and lack factual support. (ECF No. 24-1, at 13).  As to Plaintiff's second theory, the Board avers that Plaintiff fails to allege that the Board owed Decedent a duty because Decedent, and the other students, "were off school grounds at the time of the murder." (*Id.* at 15). Further, the Board contends that "Plaintiff[] [has] not ple[aded] facts to show that the [Board] knew or should have known that Jailyn would be assaulted and killed while suspended and off of school property on January 21, 2022[,] such that it could have prevented the harm." (*Id.*).

Plaintiff fails to allege plausibly a negligence claim against the Board.

> Although there is generally no duty to protect others from third parties' conduct, such a duty may arise in the presence of a special relationship. *See, e.g., Rhaney v. Univ. of Md. E. Shore,* 388 Md. 585, 880 A.2d 357, 364 (2005) (citations omitted). In certain circumstances, a special relationship exists between a school district and its students. *Cf. Stephen Jay Photography, Ltd. v. Olan Mills, Inc.,* 903 F.2d 988, 993 (4th Cir. 1990) (noting that "schools and the students enjoy a special relationship of trust"). This rule[] owes in no small part to the fact that, as a general matter, school districts assume significant responsibility for the "welfare and guidance" of children within their

24

> purview.  *Cf. Resetar v. State Bd. of Ed.,* 284
> Md. 537, 399 A.2d 225, 242 (1979).

*Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F.Supp.2d 659,

669 (D.Md. 2012).

Plaintiff sufficiently pleaded that the Board owed a duty "to

act reasonably to protect students who are in [its] care, custody,

and control," including Decedent.  (ECF No. 1 ¶ 164).  Plaintiff

vaguely alleges that the Board breached this duty, but fails to

provide sufficient factual support.

For example, Plaintiff alleges that the Board was "aware of

significant injury threats, [was] warned specifically of [J.F.]

and [T.H's] violent behavior, and/or [] witnessed [J.F.] and

[T.H.'s] violent behavior on and outside of school property," (ECF

No. 1 ¶ 173) and that the Board "had the ability to take measures

to extend in-school safety when they became aware of the severity

of the threat of harm or danger to its students" (*Id.* ¶ 179).

Plaintiff fails, however, to allege sufficient facts showing: (1)

that any individual was aware of any threat made by J.F. or T.H.

to Decedent, (2) who was allegedly warned about J.F. or T.H.'s

"violent behavior," (3) who allegedly witnessed J.F. or T.H.'s

"violent behavior," (4) what severe threat of harm the Board was

aware of, and critically (5) that J.F. and Decedent had any

interaction after the February 10, 2020 altercation or that T.H.

and Decedent had any interaction prior to the January 18, 2022

altercation.  Plaintiff broadly alleges that the Board failed to protect Decedent, and other students, but provides no examples of the Board being aware of a risk to student safety and failing to act.  Without any of that factual support, Plaintiff's negligence claim cannot survive a motion to dismiss.

To the extent that Plaintiff's negligence claim is premised on the Board breaching a duty to Decedent by suspending him, which Plaintiff alleges is the "proximate cause" of Decedent's death, Plaintiff fails to allege the Board owed a duty to Decedent.  (ECF Nos. 1 ¶¶ 55, 180-84; 27, at 7).  Judge Xinis has explained:

> A school assumes such duty most clearly when the parents "relinquish their supervisory role over their children to teachers and administrators during school hours"; and in that circumstance, the school is responsible for protecting the student from "foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." *In re Gloria H.*, 410 Md. 562, 583 (2009) (quoting *Frugis v. Bracigliano*, 177 N.J. 250, 268 (2003); *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F.Supp.3d 645, 668 (D.Md. 2021). Notably, liability extends to the school largely because the risk of injury from the third party is "foreseeable" to the school. *See In re Gloria H.*, 410 Md. at 583. Indeed, foreseeability remains "the most important variable in the duty calculus." *Doe on behalf of Doe v. Small*, 654 F.Supp.3d 376, 403 (D.N.J. 2023). This is especially so where "the failure to exercise due care creates risks of personal injury." *Pendleton v. State*, 398 Md. 447, 462 (2007) (quoting *Jacques v. First Nat'l Bank of*

> *Maryland*, 307 Md. 527, 535 (1986) (citations
> omitted)).

*Gomez v. Heights, Inc.*, No. 22-cv-03117-PX, 2024 WL 3964760, at *4
(D.Md. Aug. 28, 2024).  Plaintiff has not alleged plausibly any
facts that suggest the risks presented by the other students to
Decedent on the day of his death were foreseeable to the Board.
There are no facts from which to infer that Decedent or the other
students were in the custody or control of the Board on the day of
Decedent's death and, as discussed above, there are no facts which
suggest the Board was aware of a risk of danger posed to Decedent
outside of the school.

Because Plaintiff fails to provide sufficient facts
demonstrating that the Board breached a duty owed to Decedent while
alive or owed a duty to Decedent on the day of his death, Plaintiff
has not stated a plausible claim of negligence.  Accordingly, Count
V, as to the Board, will be dismissed.

### 6.  Count VI: Wrongful Death

Plaintiff brings a wrongful death claim against Defendants.

> Maryland's Wrongful Death Act allows a
> decedent's beneficiaries or relatives to bring
> an action "against a person whose wrongful act
> causes the death of another." Md. Code Ann.,
> Cts. & Jud. Proc. § 3-902(a); *see also Est. of
> Green v. City of Annapolis*, 696 F.Supp.3d 130,
> 174-75 (D.Md. 2023) (quoting *Spangler v.
> McQuitty*, 449 Md. 33, 53 (2016)). "Wrongful
> act" is defined as "an act, neglect, or
> default including a felonious act which would
> have entitled the party injured to maintain an

27

> action and recover damages if death had not
> ensued." Md. Code Ann., Cts. & Jud. Proc. § 3-
> 901(e). "The wrongful death claim is a
> separate cause of action." *Est. of Green*, 696
> F.Supp.3d at 175 (citing *Gardner v. Greg's
> Marine Const., Inc.*, No. 13-cv-1768-DKC, 2014
> WL 198215, at *9 (D.Md. Jan. 14, 2014)).

*Cooper v. Doyle*, No. 22-cv-0052-DKC, 2024 WL 3568564, at *15 (D.Md.

July 29, 2024).

> To plead a wrongful death claim under Maryland
> law, a plaintiff must allege: (1) the victim's
> death; (2) that the victim's death was
> proximately caused by the negligence [or other
> 'wrongful act'] of the defendant; (3) that the
> victim's death resulted in injury to the
> plaintiff, who falls within the category of
> beneficiaries defined by the statute; and (4)
> that the claim is brought within the
> applicable statutory period.

*Willey,* 557 F.Supp.3d at 670.   Maryland's Wrongful Death Act

defines "wrongful act" as "an act, neglect, or default including

a felonious act which would have entitled the party injured to

maintain an action and recover damages if death had not ensued."

Md. Code Ann., Cts. & Jud. Proc. § 3-902.

Plaintiff alleges the following:

> This claim for damages results from the
> wrongful death of Jailyn Lawrence Jones. This

28

claim is based upon the facts and legal
theories more fully set out herein.

At the time of death, Decedent was
otherwise in reasonably good health with a
normal life expectancy.

Decedent was a loving and dutiful child
and provided reasonable services to his
mother.

As a direct and proximate result of the
above-mentioned actions of Defendants,
individually through their actual and/or
apparent agents, servants, and employees,
Plaintiff Jones-McDaniel lost her son
prematurely, and suffered and will continue to
suffer mental anguish, emotional pain and
suffering, loss of society, companionship,
comfort, protection, guidance, attention, and
care, among other non-economic damages
permitted in a wrongful death action.

(ECF No. 1 ¶¶ 188-91).

As explained above, Plaintiff has not plausibly alleged a
"wrongful act," and thus Plaintiff has not stated a wrongful death
claim.  Accordingly, Count VI will be dismissed.

### 7.  Count VII: Survival Action

In Count VII, Plaintiff purports to bring a survival action
claim against Defendants.  As this court has explained, "a
'survival action' is merely a *mechanism* by which an estate brings
a claim that the decedent could have asserted had he survived,"
not an independent cause of action.  *Mang v. City of Greenbelt*,
No. 11-cv-1891-DKC, 2012 WL 115454, at *8 (D.Md. Jan. 13, 2012).

Accordingly, because a survival action is not itself a claim, Count VII of the complaint will be dismissed.

### 8. Count VIII: Violation of the Second, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and Maryland Declaration of Rights Articles 24 and 26

In Count VIII, Plaintiff alleges that Defendants violated the Second, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution as well as Articles 24 and 26 of the Maryland Declaration of Rights. (ECF No. 1 ¶ 200).[5] This claim appears to be brought both as a survival action and in Plaintiff Jones-McDaniel's individual capacity; the complaint does not completely identify which alleged constitutional violations were suffered by which plaintiff. While the complaint alleges that "Defendants' conduct and actions . . . violated Decedent's rights under the Maryland Declaration of Rights" (*Id.* ¶ 204), Plaintiff does not directly allege that Jailyn's rights under the U.S. Constitution were violated. In contrast, Plaintiff does affirmatively allege that "Defendants' conduct and actions . . . violated Plaintiff Jones-McDaniel's rights under the U.S. Constitution and Maryland

---

[5] Articles 24 and 26 of the Maryland Declaration of Rights are the state analogues to the Fourth and Fourteenth Amendments to the U.S. Constitution. Claims brought under these articles are therefore "construed *in pare materia* with the Fourth [and Fourteenth] Amendment[s]." *Housley v. Holoquist*, 879 F.Supp.2d 472, 482 (D.Md. 2011).

Declaration of Rights." (*Id*. ¶ 213). Specifically, Plaintiff alleges that Defendants "ignored [her] emotional state of grief after the death of Jailyn and accused her of being a threat, unreasonably searched her home, seized her personal property, and required her to undergo an unnecessary mental health evaluation. Defendants' actions, upon information and belief, towards Plaintiff Jones-McDaniel were committed with actual malice or with deliberate indifference in that Defendants unreasonably searched her home, seized her personal property, and wrongfully detained and declared her an extreme risk without due process of law." (ECF No. 1 ¶ 214). Defendants MCPS and the Board move to dismiss Count VIII as against both plaintiffs. (ECF No. 24 at 9-10, 18-20). Defendant County moves to dismiss Count VIII as against Plaintiff Jones-McDaniel. (ECF No. 33-1 at 15-17). In her oppositions to the Defendants' motions, Plaintiff appears only to challenge dismissal of her own constitutional claims, not those of Decedent. (*See* ECF Nos. 28 at 1-2, 8; 27 at 1-2, 8).

    **a.  The Board**

Plaintiff fails to allege that the Board violated Plaintiff Jones-McDaniel's rights under the U.S. Constitution or the Maryland Declaration of Rights. Plaintiff asserts that Count VIII is directed at the County, because the role of the Board and MCPS has not "yet fully developed." (ECF No. 27, at 7). Plaintiff

argues that she "must be permitted the opportunity to complete discovery and determine the extent of the role [the Board] and [MCPS] played in the violation of [Plaintiff Jones-McDaniel's] federal and State constitutional rights immediately after the death of her son." (*Id.* at 8).

This approach is inadequate. Fed.R.Civ.P. 11 requires a pre-filing factual investigation. A complaint containing factual allegations unsupported by any information obtained prior to filing violates this requirement. Fed.R.Civ.P. 11(b)(3). Plaintiff's request to "complete discovery" so that she may "determine the extent" of the Board's involvement violates this rule.

Accordingly, Count VIII will be dismissed as to the Board.

**b.  The County**

Plaintiff attempts to hold the County liable for alleged constitutional violations under a *Monell* theory of liability. Plaintiff broadly alleges that the County "unreasonably searched [Plaintiff Jones-McDaniel's] home and seized her personal property, and required her to undergo an unnecessary mental health evaluation" which "violated Plaintiff Jones-McDaniel's rights under the United States and Maryland Constitutions[.]" (ECF No. 1 ¶¶ 214, 217). Plaintiff alleges that the County's "policies,

procedures and practices permitted and/or authorized [its] agents to injure Plaintiff Jones-McDaniel." (*Id.* ¶ 218).

Plaintiff has alleged no facts, outside of those surrounding Plaintiff Jones-McDaniel's claim, to show that the County has a policy, practice, procedure, or custom of (1) unreasonably searching homes, (2) seizing property, or (3) requiring individuals to undergo unnecessary mental health evaluations. *See Boliek v. Frendlich*, No. 04-cv-03655-RDB, 2005 WL 1363980, at *6 (D.Md. June 7, 2005) ("[B]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient.") (quoting *Lanigan v. Vill. Of E. Hazel Crest*, 110 F.3d 467, 479 (7th Cir. 1997)).  Additionally, Plaintiff fails to offer factual allegations of known, widespread conduct by County employees comparable to the conduct alleged here.

Accordingly, Count VIII, as to the County, will be dismissed.

**9.  Count IX: Respondeat Superior**

In Count IX, Plaintiff purports to bring a *respondeat superior* claim against Defendants.

> Maryland courts have repeatedly held that respondeat superior is a theory of liability, not a standalone cause of action. *See Barclay v. Briscoe*, 47 A.3d 560, 567 (Md. 2012); *Schramm v. Foster*, 341 F.Supp.2d 536, 543 (D.Md. 2004); *see also Crockett v. SRA Int'l*, 943 F.Supp.2d 565, 576 (D.Md. 2013) (explaining how constructive discharge, like respondeat superior, is not a standalone claim

> but a doctrine that satisfies an element of
> another substantive claim).

*Grant v. Atlas Rest. Grp. LLC*, No. 20-cv-2226-GLR, 2021 WL 2826771,
at *5 (D.Md. July 7, 2021).  Thus, because *respondeat superior* is
not an independent cause of action, Count IX will be dismissed.

Plaintiff's attempt to employ a *respondeat superior* theory of
liability for the alleged state constitutional violations also
fails.  While "local governmental entities do, indeed, have
*respondeat superior* liability for civil damages resulting from
State Constitutional violations committed by their agents and
employees within the scope of the employment," *DiPino*, 354 Md. at
51-52, Plaintiff has failed to allege any state constitutional
violations.  Plaintiff only provides threadbare recitals of state
constitutional violations without providing any facts that support
a plausible claim.  Accordingly, Count IX will be dismissed.

## III. Doe Defendants

The Board and MCPS argue that Plaintiff's claims against the
unnamed Doe Defendants should be dismissed if the court dismisses
the rest of Plaintiff's claims.  (ECF No. 24-1, at 23).  This court
has explained, "a complaint may not stand against only unnamed,
unserved defendants." *Whitehead v. Viacom*, 233 F.Supp.2d 715, 725
n.13 (D.Md. 2002).  Because the court will dismiss the claims
against the Board, MCPS, and the County, the only remaining claims
are against the unnamed and unserved Doe Defendants.  Accordingly,

the court will dismiss Plaintiff's claims against the Doe Defendants.

## IV.    Leave to Amend

Plaintiff has only asked for leave to amend regarding count IV and not more generally.  She does not suggest that any more factual support is available.  Accordingly, the complaint will be dismissed with prejudice and without leave to amend.

## V.    Conclusion

For the foregoing reasons, both motions to dismiss will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
